# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

RENEE VENTO, *et al.*,

           Plaintiffs,

         v.

INTERNAL REVENUE SERVICE,

           Defendant.

Civil Action No. 09-289 (JMF)

## MEMORANDUM OPINION

Pending before me and ready for resolution are Plaintiffs' Motion for Summary Judgment [#11] ("Pls. Mot.") and Internal Revenue Service's Motion for Summary Judgment [#14] ("Def. Mot.").

## I. Background

On June 6, 2007, plaintiffs made their initial Freedom of Information Act ("FOIA") request to the Internal Revenue Service ("IRS"). Complaint ("Compl.") ¶ 6; Pls. Mot. Ex. A. The IRS responded on July 9, 2007 and indicated that a response to plaintiffs' request would be forthcoming by October 10, 2007. Compl. ¶ 6; Pls. Mot. Ex. B. On October 9, 2007 and again on January 10, 2008, the IRS contacted plaintiffs and requested additional time to process and respond to plaintiffs' FOIA request. Compl. ¶ 7; Pls. Mot. Ex. C. On April 30, 2008, the IRS contacted plaintiffs to request payment in the amount of $1955.00 for the estimated costs involved to produce the volume of documents related to plaintiffs' response. Compl. ¶ 8; Pls. Mot. Ex. D. Plaintiffs sent the requested funds to the IRS on October 21, 2008, communicated with an IRS Disclosure Specialist, and agreed that those documents not needing redactions should be sent to

plaintiffs as soon as possible, while those requiring redaction would be sent under separate cover. Compl. ¶ 9; Pls. Mot. Ex. E.  On October 31, 2008, plaintiffs received approximately 2,136 documents from the IRS; however, on November 17, 2008, the IRS sought an extension of time to release those documents requiring redactions. Compl. ¶¶ 10-11; Pls. Mot. Exs. F & G.  On December 3, 2008, the IRS released an additional 1,958 documents located in response to plaintiffs' request and indicated that 18 documents were redacted and two withheld completely according to FOIA exemption (b)(3). Compl. ¶ 12; Pls. Mot. Ex. H.  The IRS requested a further extension of time to release the documents, up to January 21, 2009, when it believed a final response could be provided. Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Summary Judgement [sic] [#12] ("Pls. Memo.") at 2; Pls. Mot. Ex. G.  On January 13, 2009, the IRS released another 5,113 pages of responsive documents. Def. Mot. 2; Pls. Mot. Ex. I. Finally, on February 9, 2009, the IRS released the remaining 2,721 responsive pages, withholding 1,074 in full according to various FOIA exemptions. Def. Mot. 2; Pls. Mot. Ex. I.

A subsequent review of the withheld documents allowed the IRS to release an additional 244 pages in full or in part to plaintiffs. Def. Mot. 2; Pls. Mot. Ex. K. Plaintiffs filed this case in February 2009, seeking a court order for the IRS to disclose all remaining documents responsive to the request. Compl. ¶ 15.

## II. Legal Standard

Both parties have filed motions for summary judgment pursuant to Federal Rule of Civil Procedure 56(c).  Summary judgment may be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Substantive law is determinative of the facts that are material, which are those "facts that might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (citing 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2725 at 93-95 (2d. ed. 1987)).

Summary judgment in FOIA cases is warranted "on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Miller v. Casey, 730 F.2d 733, 776 (D.C. Cir. 1984). The court of appeals for the District of Columbia Circuit has found that an agency's justification for applying a FOIA exemption to withhold documents is sufficient if it appears "'logical'" or "'plausible.'" Wolf v. CIA, 473 F.3d 370, 374-75 (D.C. Cir. 2007) (quoting Gardels v. CIA, 689 F.2d 1100, 1105 (D.C. Cir. 1982); citing Hayden v. NSA, 608 F.2d 1381, 1388 (D.C. Cir. 1979)).

### III. Analysis

Plaintiffs request that I grant summary judgment in their favor, finding no genuine issue of material fact that defendant failed to disclose all of the documents requested and that defendant withheld documents by improperly asserting FOIA exemptions. Pls. Mot. 1. Plaintiffs claim that the IRS failed to produce the following responsive documents: "(1) the case activity record for any IRS employee besides [Revenue Agent] Moss; (2) internal documents relating to the Defendant's position on

the working law regarding the definition of Virgin Islands residency; (3) memorandum of all interviews of persons regarding the individual income tax liabilities of the Plaintiffs; (4) any IRS employee's notes on any of the interviews of the Plaintiffs or of third parties interviews regarding the Plaintiffs; (5) copies of all statements (sworn or otherwise) given by individuals in connection with the investigation of the individual income tax liabilities of the Plaintiffs; and (6) written reports and recommendations concerning the proposed assessment of additional tax and penalties and any other information that is related to the determinations by the Defendant." Pls. Memo. 10.

Plaintiffs' claims can be distilled down to two issues: (1) was the search adequate; and (2) were documents properly withheld. I will consider each in turn.

## A. The Search

According to plaintiffs, the IRS failed to perform a reasonable search for the requested documents. Pls. Memo. 4. The IRS argues that the search was reasonably calculated to uncover documents responsive to plaintiffs' request. Internal Revenue Service's Brief in Opposition to Plaintiffs' Motion for Summary Judgment [#16] ("Def. Opp.") at 3-4. The plaintiffs requested information related to their individual income tax liabilities for tax years 2002 through 2004. Memorandum of Points and Authorities in Support of Internal Revenue Service's Motion for Summary Judgment [#14] ("Def. Memo.") at 5; Compl. Ex. A. The IRS determined who was the agent assigned to the examination of plaintiffs' tax liabilities during that period, Revenue Agent Moss, and obtained the responsive documents from her. Def. Memo. 3-4 (citing Declaration of Kathleen Brewer ("Brewer Decl.") ¶¶ 2-7). Plaintiffs argue that this is unreasonable, because at least eleven other individuals were involved in the fact-finding process for the

IRS case against plaintiffs and at least fourteen people may have responsive documents, but their files were not searched for responsive documents. Pls. Memo. 13-14.

The standard by which the Court must consider reasonableness is not whether there was absolute exhaustion of the files, see Miller v. Dep't of State, 779 F.2d 1378, 1385 (8th Cir. 1985), but whether the agency has shown that the search was "reasonably calculated to uncover all relevant documents." Steinberg v. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting Weisberg v. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984)). The court of appeals has warned that "[t]he question is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate," which is judged by a standard of reasonableness that depends on the facts of the case. Steinberg, 23 F.3d at 551. An agency may rely upon "reasonably detailed, nonconclusory affidavits submitted in good faith" to demonstrate the adequacy and reasonableness of a search. Id.

Here, the IRS has submitted an affidavit by Kathleen Brewer, a Senior Disclosure Specialist in the Office of Disclosure at the IRS, detailing the procedure followed in conducting the search for documents. See Brewer Decl. ¶¶ 2-7. Brewer received the assignment to process plaintiffs' FOIA requests after the it was transferred from another disclosure specialist, Glendsey Tucker. Id. at ¶ 2. After receiving plaintiffs' requests on June 11, 2007, Tucker searched the IRS's Integrated Data Retrieval System ("IDRS") for records pertaining to plaintiffs. Id. at ¶ 3. The search produced information that there was examination activity in plaintiffs' records for each tax year requested. Id. From this information, Tucker searched the IRS's Audit Information Management System ("AIMS") transcripts and determined that either Rosemary Burke or Eloise McCullogh

was the assigned Revenue Agent on the examination. Id. On June 18, 2007, based on that information, Tucker e-mailed both revenue agents to inquire which of the two actually had the case. Id. On June 20, 2007, Jacqueline Moss responded that she was in fact the agent assigned to the case and requested that Tucker provide her with a search memo and a copy of the requests. Id. at ¶ 4. On February 21, 2008, the requests were transferred to Brewer, who reviewed the documents provided by Moss, determined what information should be withheld, and calculated the processing fees due. Id. at ¶¶ 5 & 7.

According to plaintiffs, this search is unreasonable because it did not include a search of any other files from IRS employees whom plaintiffs allege to have relevant documents. Pls. Memo. 13. Plaintiffs provide evidence that other IRS employees participated in their case by showing that employees other than Moss attended certain interviews that took place beginning January 18, 2008. Id. at 13-14. Further, e-mails from Moss, produced on July 28, 2009, show that other possible IRS employees were involved in the audit of plaintiffs. Id. at 14. Defendant argues FOIA requests have temporal limits, and that, in determining which records are responsive to a request, IRS regulations set the cut-off date for a FOIA request as "the date of the receipt of the request by the appropriate disclosure officer." Def. Opp. 2 (quoting 26 C.F.R. § 601.702 (c)(8)(ii)). Plaintiffs argue that, despite the regulation, the cut-off date should be January 8, 2008, the date when the IRS wrote to plaintiffs, asking for additional time to process their request. See Statement of Material Facts for Which There is No Genuine Issue In Support of Plaintiffs' Motion for Summary Judgment, Pls. Mot. at Ex. C. Plaintiffs' finding of significance in the typical request of IRS for additional time is misplaced. That the IRS needed more time to process the request and suggested that it would finish

by a certain date did not somehow retroactively amend plaintiffs' request so that it should be deemed to include documents created after the date of the request, June 6, 2007, but before the date IRS proposed as the day it hoped to finish, April 10, 2008. Plaintiffs are, of course, entitled to file another FOIA request, and the cut-off date for that request will be, once again, the date of its request. Plaintiffs' notion, that somehow the cut-off date is miraculously transmuted into the date for the proposed response, would unfairly permit plaintiffs to "jump the queue" in front of all the other requests received by IRS after June 6, 2007.

There is no inconsistency between this conclusion and the decision in Public Citizen v. Dep't of State, 276 F.3d 634, 644 (D.C. Cir. 2002), in which the court of appeals rejected the Department of State's use of the request date as the cut-off date for the search and held "that with minimal administrative hassle, the Department could apply a date-of-*search* cut-off" to a particular search. In the same breath, the court stated that "nothing in this opinion precludes the Department [of State] or any other federal agency from attempting a more compelling justification for imposing a date-of-request cut-off on a particular FOIA request." Id.

It is clear, however, from Kathleen Brewer's affidavit, that plaintiffs' request was received on June 11, 2007 and that an IRS employee almost immediately began researching the IRS database for records pertaining to the plaintiffs. Brewer Decl. at ¶ 3. Within a week, that employee had asked two IRS agents who had the case, and another responded two days later that she had the case. Thus, the search began within five days of the request, and I see no reason to use any date other than the request date as the cut-off, since the search date is only a few days later. The IRS's use of the request date can

7

hardly be described as arbitrary. On the other hand, plaintiffs' use of January 10, 2008, the date the IRS asked for more time to complete the search, has nothing to recommend it for all the reasons stated above.

Glendsey Tucker, an IRS employee, transferred plaintiffs' request to Kathleen Brewer, a senior IRS disclosure specialist. Brewer determined that the IRS revenue agent assigned to the case was either Rosemary Burke or Eloise McCullogh. Tucker e-mailed both of them, asking who had plaintiffs' case. Neither replied. Instead, Jacqueline Moss responded that she was the assigned agent. Brewer Decl. ¶¶ 2-3.

Plaintiffs first object to the failure of Brewer to ascertain whether Burke or McCullogh had any responsive records. It must be recalled, however, that plaintiffs now have thousands of documents, and they do not point to one suggesting the involvement of either Burke or McCullogh. From their names showing up in a database as assigned agents hardly follows that they had any thing to do with plaintiffs' case, let alone that they have any responsive documents.

The presence of other IRS employees at interviews in 2008, after the date of the request, does not in itself provide any evidence that those or other employees would have documents that were created prior to the cut-off date. Plaintiffs provide a string of e-mails from Moss to other individuals regarding a request for "the 2004 returns of the Vento's." See Pls. Mot. Ex. P. Moss asks two people to make the requests; they then ask another person to "take care of this." Id. There is no reference to additional documents in the e-mails. In addition, there is an e-mail string in the same exhibit regarding an extension document from Lana Vento. Id. Moss is e-mailing a group of individuals about the status of the documents. Id. She indicates that she will let them know when she has

received the documents in question. Id.  Moss refers to documents, which she is waiting

to receive from plaintiffs in this case and of which she confirms receipt. Id.  There is no

indication that recipients or authors of these e-mails possessed any documents, much less

that they possessed documents that Moss herself did not also have. Id.  The court of

appeals has found that speculating about the existence of other documents does not rebut

the presumption of good faith accorded to affidavits submitted by the agency. SafeCard

Services, Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citing Ground Saucer

Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981) (citations and quotation marks

omitted)).  Plaintiffs do not provide the Court with more than speculation that other

documents exist and cannot adequately rebut the presumption of good faith.  As such, I

find the IRS's search to be reasonable.

B. Withheld Documents

FOIA vests the court with the authority to determine whether a document or any

part of a document is properly withheld under the enumerated FOIA exemptions. 5

U.S.C. § 552(a)(4)(B).[1]  The agency has the burden of proving that "each document that

falls within the class requested either has been produced, is unidentifiable, or is wholly

exempt from the Act's inspection requirements." Citizens for Responsibility and Ethics

in Washington v. Dep't of Homeland Sec., 648 F. Supp. 2d 152, 155 (D.D.C. 2009)

(citing Goland v. CIA, 607 F.2d 339, 352 (D.C. Cir. 1978), cert. denied, 445 U.S. 927,

(1980); see also Maydak v. Dep't of Justice, 218 F.3d 760, 764 (D.C. Cir. 2000)).  In

granting summary judgment, the Court may only consider the information provided by

the government in affidavits or declarations that "the documents and the justifications for

---

[1] All references to the United States Code or the Code of Federal Regulations are to the
electronic versions that appear in Westlaw or Lexis.

nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." <u>Military Audit Project v. Casey</u>, 656 F.2d 724, 738 (D.C. Cir. 1981).

1. *Structure of the Analysis*

Only 46 of the withheld documents are at issue, with the IRS claiming one or more exemptions as a basis for withholding them. As to certain documents, plaintiffs concede the applicability of one exemption while protesting against IRS's reliance on another. The following chart illustrates the parties' dispute and my rulings, resolving them. Thus, it shows the Bates number of the document, the exemptions claimed by IRS, any concession made by plaintiffs that an exemption applies, plaintiffs' objection to the claim of exemption as to that same document and my conclusion that a particular exemption applies.

| Bates Number | Exemptions claimed | Plaintiffs concede Exemption | Plaintiffs object to Exemption | Sufficient Basis Court finds for Exemption |
|---|---|---|---|---|
| #00027 | 3, 6 | 6 | 3 | 6 |
| #00028 | 3, 6 | 6 | 3 | 6 |
| #00231 | 3, 5 | | 3, 5 | 5 |
| #00232 | 3 (one line), 5 | 5 | 3 | 5 |
| #00238-239 | 5, 7(C) | | 5 | 5, 7(C) |
| #00240-241 | 3, 5, 7(A) | | 3, 5 | 7(A) |
| #00242 | 3, 5 | | 3, 5 | -- |
| #00243 | 5, 7(C) | 7(C) | 5 | 5, 7(C) |
| #00246 | 3, 7(C) | | 3 | 7(C) |

| | | | | |
|---|---|---|---|---|
| #00302 | 3, 5, 7(A) | 5 | | 5, 7(A) |
| #00314 | 3, 5, 7(A), (C) | 5 | 3 | 5, 7(A), 7(C) |
| #00325-326 | 3, 5, 6, 7(A) | 6 | 3 | 6, 7(A) |
| #00455 | 3, 7(C) | | 3 | 7(C) |
| #00456 | 5, 7(C) | | 5 | 5, 7(C) |
| #00457-461 | 5, 7(E) | 7(E) | 5 | 5, 7(E) |
| #00464-466 | 3, 5, 7(A), (C) | | 3, 5 | 5, 7(A), (C) |
| #00475 | 3, 6, 7(A) | 6 | 3 | 6, 7(A) |
| #00494 | 3, 7(A) | | 3 | 7(A) |
| #00496 | 3 (one line), 5, 7(A) | 3 | 5 | 3, 5, 7(A) |
| #00497-498 | 5, 7(A) | 5, 7(A) | 3 | 5, 7(A) |
| #00518-520 | 3 (one line), 5, 7(A) | | 3, 5 | 7(A) |
| #00529 | 3, 5, 7(A) | | 3, 5 | 7(A) |
| #00530 | 3, 5, 7(A) | | 3, 5 | 7(A) |
| #00532-533 | 3, 5, 7(A) | 3 | 5 | 3, 5, 7(A) |
| #00534 | 3, 7(A) | | 3 | 7(A) |
| #00535 | 3,6, 7(A), (C) | 6 | 3 | 6, 7(A), 7(C) |
| #00608 | 3,6, 7(C) | 6 | 3 | 6, 7(C) |
| #00609 | 3, 5, 7(A) | | 3, 5 | 7(A) |
| #00612 | 6, 7(C) | 6 | 3 | 6, 7(C) |
| #00616-618 | 3, 5, 7(A) | | 3, 5 | 7(A) |
| #00622 | 3, 7(C) | | 3 | 7(C) |
| #00623 | 3 | | 3 | 7(C) |
| #00626 | 3, 5, 7(C) | | 3, 5 | 7(C) |
| #00633-634 | 5, 7(A) | | 5 | 5, 7(A) |
| #00638 | 3, 5, 7(A), (C) | 5 | 3 | 5, 7(A), 7(C) |
| #00639-643 | 3, 7(C) | | 3 | 7(C) |

| | | | | |
|---|---|---|---|---|
| #00645-646 | 3, 5 | 5 | 3 | 5 |
| #00647-648 | 3, 5 | | 3, 5 | 5 |
| #00653 | 3, 5, 7(A), (C) | 5 | 3 | 5, 7(A), 7(C) |
| #00752-753 | 3, 5 | 5 | 3 | 5 |
| #00755, 766 | 3, 5 | 5 | 3 | 5 |
| #00757-758 | 5 | | 5 | 5 |
| #00761 | 3, 5, 7(A) | | 3 | 7(A) |
| #00877 | 3, 6, 7(C) | 6 | 3 | 6, 7(C) |
| #00886 | 3, 7(C) | | 3 | 7(C) |
| #001036 | 5, 6, 7(A), (C) | 6 | 5 | 5, 6, 7(A), 7(C) |

Obviously, if plaintiffs concede the applicability of an exemption, the document is exempt and there is no reason to reach the question of whether it is exempt under any other exemption. Additionally, even if plaintiffs do not concede the point, if I conclude that one exemption has been properly applied, there is no reason to reach the question of whether any other was properly applied as well. I will therefore consider the exemptions claimed in the following order: Section B(2) will consider plaintiffs' objections to the application of Exemption 7(A) & 7(C); Section B(3) will consider plaintiffs' objections to the application of Exemption 5 and the attorney-client privilege; Section B(4) will consider plaintiffs' objections to the application of Exemption 5 and the work product privilege; Section B(5) will consider plaintiffs' objections to the application of Exemption 5 and the deliberative process privilege; and Section B(6) will consider plaintiffs' objections to the application of Exemption 3.

2. *Exemption 7(A) & 7(C)*

As noted in the chart, 34 documents are withheld under Exemption 7(A) and (C), which allows an agency to withhold documents that are compiled for law enforcement purposes when the information "could reasonably be expected to interfere with enforcement proceedings" or "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(A) & (C).

The Court may rely on affidavits that describe the withheld documents in sufficient detail to determine that they were compiled in the course of an investigation and for law enforcement purposes. See, e.g., Barney v. IRS, 618 F.2d 1268, 1272-73 (8th Cir. 1980) (government need only establish that the documents were investigatory records compiled for law enforcement purposes and that production would interfere with pending enforcement proceedings and finding that it was apparent by the very nature of plaintiffs' request that they sought disclosure of all investigatory records compiled on them by the IRS). In this case, plaintiffs seek the "administrative file" for the audit, including:

> any worksheets, workpapers, notes, documents, memoranda, computations and other materials prepared or accumulated relative to this examination and other materials prepared or accumulated relative to this examination by employees of the [IRS], any other governmental agency, or otherwise, including internal documents, memoranda, memoranda of all interviews of persons regarding the individual income tax liabilities of the taxpayer, copies of all statements (sworn or otherwise) given by individuals in connection with the investigation of the individual income tax liabilities of the taxpayer, case activity record, written reports and recommendations concerning the proposed assessment of additional tax and penalties and any other information that is related to the determinations by the [IRS].

Pls. Mot. Ex. A. The very nature of the documents sought implicates Exemption 7. They were clearly compiled in the course of an investigation into plaintiffs' tax liability.

The documents related to the examination, or audit, of the plaintiffs' tax liability are most certainly "law enforcement records" under this exemption.  Plaintiffs' assertion that a distinction should be drawn between civil and criminal enforcement of the Internal Revenue Code is incorrect.  The Internal Revenue Code is a law and the IRS enforces it, no matter the ultimate nature of the proceeding brought against the taxpayer.  To create the narrower exemption that plaintiffs want, premised on the popular use of the words "law enforcement" to mean police agencies, amends the statute and imputes to Congress an irrational intention to distinguish between the manner in which various agencies enforce law so that the records of, let us say, the FBI are exempt, but the records of the Department of Agriculture are not, even though both obviously enforce the law in different ways.  There is no warrant in the law for that distinction and the federal courts have rejected it.  See, e.g., EduCap Inc v. IRS, No. 07-CV-2106, 2009 WL 416428, at *4 (D.D.C. Feb. 18, 2009) (citing Faiella v. IRS, No. 05-CV-238, 2006 WL 2040130, at *4 (D.N.H. July 20, 2006)); see also White v. IRS, 707 F.2d 897, 901 (6th Cir. 1983) (citing Williams v. IRS, 345 F. Supp. 591, 593 (D.Del. 1972), aff'd 479 F.2d 317 (3rd Cir. 1973), cert. denied sub nom. Donlon v. IRS, 414 U.S. 1024 (1973); Pope v. United States, 599 F.2d 1383, 1385 (5th Cir. 1979) (finding FOIA Exemption 7(A) applicable to investigation-developed documents, whether potentially civil or criminal in import)). The IRS clearly indicated that the release of the withheld information in this case could reasonably be expected to interfere with enforcement proceedings, claiming that the disclosure "could reveal the identity of cooperating witnesses and reveal physical and/or testimonial evidence gathered to date, reveal transactions being investigated; or the reliance placed by the government on such information." Singh Decl. ¶ 23.

Other than their asserted distinction between audits and criminal enforcement, plaintiffs do not otherwise object to the application of Exemption 7(A) to these documents. I therefore conclude that the documents fall within Exemption 7(A). Thus, I find that all of the documents withheld in accordance with this exemption were properly withheld, including Bates ## 00240-241, 00302, 00314, 00325-326, 00464-466, 00475, 00494, 00496, 00497-498, 00518-520, 00529, 00530, 00532-533, 00534, 00535, 00609, 00616-618, 00633-634, 00638, 00653, 00761, and 001036.

The other grounds asserted by the IRS for withholding documents under Exemption 7 is that the withheld documents "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). The IRS indicated that it asserted Exemption 7(C) on documents to protect the names, addresses, telephone numbers, and social security/EIN numbers for third party witnesses not directly involved with the examination of the plaintiffs' tax liability. Singh Decl. ¶ 24. The D.C. Circuit has held that, "unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." SafeCard, 926 F.2d at 1206. While plaintiffs claim that they have a right to this third-party information under 26 U.S.C. § 7602, which requires the IRS to inform plaintiffs of third-party summons,[2] plaintiffs have not claimed that the IRS is engaged in an illegal activity, and this information is necessary either to refute or establish that assertion. Further, relying on SafeCard, the court of appeals

---

[2] This argument has been rejected by a judge of this Court, finding that "there is nothing in the FOIA that precludes the government from relying on an otherwise applicable FOIA exemption when a non-FOIA statute requires disclosure." EduCap, 2009 WL 416428, at *4.

protects those portions of responsive documents from disclosure "to the extent any information contained in 7(C) investigatory files would reveal the identities of individuals who are subjects, witnesses, or informants in law enforcement investigations." Nation Magazine, Washington Bureau v. U.S. Customs Serv., 71 F.3d 885, 896 (D.C. Cir. 1995). Nevertheless, the court of appeals notes that SafeCard cannot be read to permit "an agency to exempt from disclosure *all* of the material in an investigatory record solely on the grounds that the record includes some information which identifies a private citizen or provides that person's name and address in order to protect the privacy of those persons," and it indicates that records pertaining to an individual's activity might not be exempt when the records are cloaked in the public interest because they shed light on agency action. Nation Magazine, 71 F.3d at 895.

While a person's privacy interest represented by this exemption might yield in some cases to the public interest, the plaintiffs seek this information to benefit themselves as private litigants. They cannot claim that the disclosure of the identifying information the IRS deleted would advance any public interest. The FOIA was "fundamentally designed to inform the public about agency action and not to benefit private litigants." N.L.R.B. v. Sears, Roebuck & Co., 421 U.S. 132, 143 n.10 (1975); see also Renegotiation Bd. v. Bannercraft Clothing Co., Inc., 415 U.S. 1, 24 (1974) (finding that discovery for litigation purposes is not an indicated purpose of FOIA)). To disclose the information concerning the identity of third-party individuals would not provide the public with information about agency action, and plaintiffs do not claim that it will. See, e.g., Johnson v. Comm'r of Internal Revenue, 239 F. Supp. 2d 1125, 1137 (W.D. Wash. 2002) (finding that the IRS properly withhold documents "identifying third parties and

witnesses contacted during an IRS investigation, as well as information that these parties gave to the IRS").

Instead, plaintiffs claim that the public interest tips in favor of disclosure because the public interest being asserted is to show that the IRS acted in a negligent or improper manner in its performance of its statutory duty under FOIA by improperly withholding documents from the plaintiffs. Pls. Memo. at 29. To support their argument, plaintiffs rely on National Archives and Records Administration v. Favish, 541 U.S. 157 (2004), which indicates "a requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." Id. at 174.

Plaintiffs' argument is tautological and misconceives the ruling in National Archives and Records Administration. The plaintiffs argue that the IRS improperly withheld documents and that the court must order the disclosure of the documents to prove that the IRS improperly withheld the documents. First of all, Congress clearly provided a procedure for parties claiming the government has improperly withheld documents under a FOIA exemption; it is the very process of judicial review that I am currently undertaking. See 5 U.S.C. § 552(a)(4)(B). The plaintiffs' suggestion that the IRS should disclose the documents to them in order to prove that they did not improperly withhold the documents goes completely against the process of review provided in FOIA. In addition, the improper withholding of requested documents is not the type of government "impropriety" to which the interest of privacy yields. Further, the evidence plaintiffs provide for the impropriety is that the IRS did not disclose the information related to a witness interviewed in 2008. The interview occurred outside of the temporal

period covered by the request, thus, it has no significance as evidence of IRS impropriety.

Thus, I find the documents in the chart, which are withheld according to Exemption 7(C), were properly withheld, including: Bates ## 00238-239, 00243, 00246, 00314 00455, 00456, 00464-466, 00535, 00608, 00612, 00622, 00626, 00638, 00639-643, 00653, 00877, 00886, 001036.  Further, I find that Bates # 00623 can also be withheld pursuant to Exemption 7(C).[3]  Some of these documents, as indicated above, are also properly withheld under Exemption 7(A).

3. *Documents Withheld Pursuant to Exemption 5 and Attorney-Client Privilege*

Exemption 5 allows agencies to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).  Exemption 5 serves to incorporate the privileges the government would enjoy under the relevant statutory or case law in the pretrial discovery context. F.T.C. v. Grolier Inc., 462 U.S. 19, 27 (1983) (quoting Renegotiation Bd. v. Grumman Aircraft Engineering Corp., 421 U.S. 168, 184 (1975)).  The attorney-client privilege is one such evidentiary privilege encompassed by Exemption 5.  See, e.g., Tax Analysts v. IRS, 294 F.3d 71, 76 (D.C. Cir. 2002) (citing Burka v. HHS, 87 F.3d 508, 516 (D.C. Cir. 1996)); see also Mead Data Central, Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 252 (D.C. Cir. 1977).

-----

[3] The description of the document, "Memorandum to File from Moss memorializing her impression of a telephone conversation with a third party taxpayer regarding an interview pursuant to a summons," is almost identical to that of Bates # 455, "Memorandum to File written by Moss memorializing her impressions of a telephone conversation with a third party regarding a summon [sic]." App. A.

The purpose of the attorney-client privilege is to protect a client's confidences to his or her attorney, thereby encouraging an open and honest relationship between the client and the attorney. Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 862 (D.C. Cir. 1980). Federal courts have extended the privilege in the converse direction, protecting attorney's written communication to a client, with the purpose of again protecting against inadvertent disclosure of client's confidences; however, the court of appeals has determined that communication from the attorney is only protected if it is based on confidential information provided by the client. Mead Data Central, Inc., 566 F.2d at 254. Thus, "when an attorney conveys to his client facts acquired from other persons or sources, those facts are not privileged." In re Sealed Case, 737 F.2d 94, 99 (D.C. Cir. 1984) (citing Brinton v. Dep't of State, 636 F.2d 600, 604 (D.C. Cir. 1980), cert. denied, 452 U.S. 905 (1981)).

As indicated in the chart, plaintiffs concede the application of Exemption 5 to some of these documents. I will now consider the documents to which the plaintiffs object in response to defendant's assertion of Exemption 5 and the attorney-client privilege. In determining whether the attorney-client privilege exists in a FOIA context, the court of appeals has considered whether the information in the withheld documents "was communicated to or by an attorney as part of a professional relationship in order to provide the [agency] with advice on the legal ramifications of its actions" and whether "the information is confidential." Mead Data Central, Inc., 566 F.2d at 253. As the plaintiffs rightly argue, the mere fact that an attorney is listed as a recipient or author does not make a document protected under this privilege. Pls. Memo. at 22. Nevertheless, all of the documents in question, save two, Bates ## 00242 and 00457-461,

are clearly communications to or by an attorney and relate to advice on the legal ramifications of agency action.  See, e.g., App. B at Row 19 (Bates # 001036: "e-mail between Moss and IRS Counsel seeking advice on addressing a third party's noncompliance with summons").  Further, plaintiffs provide no evidence to suggest that the confidentiality of the documents is in question.  Thus, I find Bates ## 00231, 00238-239, 00456, 00464-466, 00496, 00532-533, 0633-634, 00757-758, and 001036.

Plaintiffs also argue that factual information should be segregated and disclosed. Id.  On this point, plaintiff is incorrect.  Factual information provided by the client to the attorney is the essence of the privilege; only when the attorney conveys facts acquired from a third party does the protection of the privilege come into question.  In re Sealed Case, 737 F.2d at 99 (citing Briton, 636 F.2d at 604)).  There is no such instance here, and the IRS may continue to withhold the content of these documents in their entirety.

I turn now to the two documents which do not clearly represent an attorney-client communication: Bates ## 00242 and 00457-461.  The first document, # 00242, is a "'Conference or Contact Memorandum' written by revenue agent regarding a third party taxpayer's interview."  Singh Decl. 16.  I believe that this document was inadvertently withheld under Exemption 5 and that the IRS would have grounds to withhold this document that were not asserted.  In cases involving privilege in the discovery context, I have found that inadvertent mistakes on a privilege log do not justify the harsh sanction of the production of a privileged document.  See, e.g., Trustees of Elec. Workers Local No. 26 Pension Trust Fund v. Trust Fund Advisors, Inc., No. 03-CV-2332, 2010 WL 558719, *8 n.8 (D.D.C. Feb. 12, 2010)).  I will not impose such a sanction here.  Instead, I will order the IRS to show cause, within 10 days of this Order, why it should not

disclose Bates # 00242. Further, for the reasons stated below, I find that the IRS properly withheld Bates ## 00457-461 according to Exemption 5 and the work-product privilege; therefore, I will not need to consider whether it was also properly withheld under the attorney-client privilege.

### 4. *Documents Withheld Pursuant to Exemption 5*<br>*and the Attorney-Work Product Privilege*

Plaintiffs object to the IRS's claim of attorney-work product privilege in reference to the 7 documents listed in their Appendix C. App. C to Pls. Mot. Further, plaintiffs ask that the Court require the IRS to produce the identities of the third parties in those instances where it asserted the attorney-work product doctrine and for an *in camera* review of the 7 contested documents. Pls. Mot. 1-2.

Like the attorney-client privilege, the work-product privilege falls within the protection of Exemption 5. <u>N.L.R.B. v. Sears, Roebuck & Co.</u>, 421 U.S. at 154. The work-product privilege protects written materials lawyers prepare "in anticipation of litigation." Fed. R. Civ. P. 26(b)(3). According to Federal Rule 26(b)(3), "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative" may not be discovered. Fed. R. Civ. P. 26(b)(3)(A). The purpose of the privilege is to protect the adversary process by ensuring that lawyers work with a "degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." <u>Hickman v. Taylor</u>, 329 U.S. 495, 510 (1947).

The attorney work-product privilege is not an absolute protection; rather, it is "qualified and may be overcome by need and undue hardship." <u>In re Seagate Technology, LLC</u>, 497 F.3d 1360, 1375 (Fed. Cir. 2007) (citing Fed. R. Civ. P. 26(b)(3)).

A distinction is drawn between work product that is factual and work product that is the result of mental processes such as plans, strategies, tactics, and impressions, whether memorialized in writing or not. Id. A showing of substantial need and inability to obtain the equivalent without undue hardship can overcome the privilege as to factual work product. See Fed. R. Civ. P. 26(b)(3); see also Upjohn Co. v. United States, 449 U.S. 383, 400 (1981); Director, Office of Thrift Supervision v. Vinson & Elkins, LLP, 124 F.3d 1304, 1307 (D.C. Cir. 1997).

I have already found Bates ## 00231, 00238-239, 00240-241, 00243, and 001036 to be properly withheld under other exemptions; therefore, I will not have the occasion to consider whether they were also properly withheld here, as they will be withheld regardless. As for Bates # 00242, I have asked the IRS to provide supplemental information supporting its decision to withhold the document. Thus, the only document that remains is Bates ## 00457-461, a "[m]emorandum from DOJ to the IRS/DOJ working group regarding international cases, providing litigation guidelines for enforcing IRS summonses issued under *Bank of Nova Scotia* rules." App. C to Pls. Mot.

The IRS has withheld Bates ## 457-461 according to Exemption 5, asserting attorney-client and work-product privileges, and to Exemption 7(E), which allows the agency to withhold from disclosure information that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). The plaintiffs have not objected to the application of Exemption 7(E). Instead, the plaintiffs argue generally that the work-product privilege is improperly applied because the

documents were not created in anticipation of litigation and that the IRS did not release

factual portions of the withheld documents. Pls. Memo. at 25. The IRS claims that the

memorandum sets forth "litigation guidelines for enforcing IRS summons" and that

disclosure of the memorandum "could provide parties who do not wish to comply with

the summons with information they could use to fight or otherwise circumvent the

summons." Def. Opp. 18-19. As such, the IRS argues that the memorandum could be

used to circumvent the law. Id. at 19. This rationale also indicates that the document is

used in preparation of potential litigation to enforce a summons. Thus, under either

Exemption 5 or 7, the IRS has properly withheld the document and will not be forced to

disclose it.

5. *Documents Withheld Pursuant to Exemption 5 and Deliberative Process Privilege*

Plaintiffs object generally to the IRS's application of Exemption 5 and the

deliberative process privilege, without naming specific documents. Pls. Memo. 18-21.

Instead, plaintiffs assert that the privilege is overly applied in this case and that "there is a

good possibility that numerous documents Moss and other IRS employees working on

the 'V.I. Project' have received qualify as the IRS's 'working law' and should be

disclosed as they would fall within the definition of [requested information]." Pls. Memo.

20-21.

The deliberative process privilege provides protection for those documents which

reflect "advisory opinions, recommendations, and deliberations that are part of a process

by which Government decisions and policies are formulated." Dep't of the Interior v.

Klamath Water Users Protective Assoc., 532 U.S. 1, 8-9 (2001) (citing N.L.R.B. v. Sears,

Roebuck & Co., 421 U.S. at 150). The purpose of the privilege is three-fold: first, it

"protects candid discussions within an agency;" second, "it prevents public confusion from premature disclosure of agency opinions before the agency established its final policy;" and, third, "it protects the integrity of an agency's decision," preventing the public from judging officials based on information they may have considered prior to issuing their final decision. Alexander v. F.B.I., 192 F.R.D. 50, 55 (D.D.C. 2000) (citing Judicial Watch v. Clinton, 880 F. Supp. 1, 12 (D.D.C. 1995), aff'd, 76 F.3d 1232 (D.C. Cir. 1996)).  The privilege promotes the quality of agency decision-making by protecting decision-makers' ability to communicate freely and privately without concern that deliberations will become the subject of discovery. Klamath Water Users Protective Assoc., 532 U.S. at 8-9.

　　For the privilege to apply, communications must be pre-decisional. N.L.R.B. v. Sears, Roebuck & Co., 421 U.S. at 151.  Not every document related to a given decision will be protected by the privilege simply because it is pre-decisional. N.L.R.B. v. Jackson Hosp. Corp., 257 F.R.D. 302, 308 (D.D.C. 2009).  Pre-decisional documents must also be deliberative to qualify for the privilege. Id.  "A document is 'predecisional' if it plays a role in the agency's decision-making process, and information within that document is deliberative if it involves the weighing of arguments for and against various outcomes." Wilson v. Dep't of Justice, 87-CV-2415, 1991 WL 111457, at *4 (D.D.C. June 13, 1991) (citing Access Reports v. Dep't of Justice, 926 F.2d 1192 (D.C. Cir. 1991)).  A document is deliberative if it reflects the give-and-take of the consultative process. Coastal States Gas Corp., 617 F.2d at 866 (D.C. Cir. 1980).  In other words, "the document must be a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." Vaughn v. Rosen, 523 F.2d 1136, 1144 (D.C. Cir.

1975).  Thus, purely factual material is not protected, "'unless the material is so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations.'" N.L.R.B. v. Jackson Hosp. Corp., 257 F.R.D. at 308 (quoting In re Sealed Case, 121 F.3d 729, 737 (D.C. Cir. 1997)).  Therefore, documents will not be protected in their entirety, unless redacting the portions of the documents that reveal deliberations is impossible. Id. at 309.  Documents that "'memorialize or evidence the policy an agency ultimately adopts on an issue'" or "documents that the agency used in dealing with the public" are not privileged. Id.

Plaintiffs rest their objection to the use of the privilege to withhold documents on mere speculation that some of the documents might include working law.  I cannot find that the exemption was improperly withheld on mere speculation, nor I will order the defendant to release the documents because of this same speculation.

### 6. *Documents Withheld Pursuant to Exemption 3*

The IRS withheld a large number of the documents according to 5 U.S.C. § 552(b)(3), which provides an exemption from production under FOIA for information "specifically exempted from disclosure by statute." Id.  The plaintiffs object to the withholding of 37 documents pursuant to this exemption, hereinafter referred to as Exemption 3.  See App. A to Pls. Mot. ("App. A").  For this FOIA exemption to apply, the statute in question must require that "the matters be withheld from the public in such a manner as to leave no discretion on the issue," or it must "[establish] particular criteria for withholding or [refer] to particular types of matters to be withheld." Id.  Thus, for the statutory exemption to apply, the IRS must be able to look to another statute to meet the exemption.

The IRS argues that 26 U.S.C. § 6103(a) mandates that tax return information be held confidential, except for a number of strictly construed exemptions. Def. Memo. 5 (citing 26 U.S.C. § 6103(a); and <u>Church of Scientology of Cal. v. IRS</u>, 484 U.S. 9 (1987)). Plaintiffs do not resist the assertion that § 6103 meets the standard for Exemption 3, but they argue that the IRS wrongly applied the exemption to 37 documents. Pls. Memo. 17; <u>see also</u> App. A.

According to the statute, "return information" has a very broad definition, encompassing:

> a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense, and . . . any part of any written determination or any background file document relating to such written determination.

26 U.S.C. § 6103(b)(2)(A-B).

Plaintiffs argue that the IRS has: (1) over-applied Exemption 3, by withholding all third-party information; and (2) withheld information that, under agency regulations, plaintiffs should have been given. Pls. Memo. 17. Plaintiffs further assert that the IRS cannot withhold the identity of and the content of conversations with third parties the IRS interviewed regarding the tax liability of plaintiffs. <u>Id.</u> I do not reach that question. First, I have found that each of the documents in question are properly withheld under other

exemptions. Second, several of the documents withheld under Exemption 3 are also withheld under Exemption 6 and plaintiffs do not object that the documents are properly withheld under this exemption. Thus, the IRS may continue to withhold the documents.

The only document to which plaintiffs object to the application of Exemption 3 and for which I have not found another exemption applies is Bates # 00242. I have already ordered defendant to provide supplemental briefing on the application of the Exemption 5 to this document. Upon receiving this, I will make a determination regarding Bates # 00242.

Lastly, I note that plaintiffs object to the IRS withholding Bates ## 00497-498 and 00612 according to Exemption 3. See Pls. Mot. at App. A. The IRS did not list these documents as withheld according to Exemption 3. Plaintiffs do not object to the withholding of the documents under any of the exemptions by which they were actually withheld. Thus, I find that the IRS may continue to withhold the documents.

### D. Senders and Recipients of Withheld E-mails

Plaintiffs also argue that even if the content of the withheld e-mails are exempt from disclosure, the sender and receiver information should be disclosed. Plaintiffs' Reply to the Defendant's Response in Opposition to the Plaintiffs' Motion for Summary Judgment [#17] at 3. For many of the documents where this information has not been disclosed, defendant has not claimed an exemption, such as exemption 6, specifically to withhold the name of the IRS Counsel, other IRS employees, and DOJ Counsel. The IRS must demonstrate that it has released all reasonably segregable portions of each withheld document. See 5 U.S.C. § 552(b). The IRS "cannot justify withholding an entire document simply by showing that it contains some exempt material." Mead Data

<u>Central</u>, 566 F.2d at 260. While Singh indicates that she is "aware of the duty to segregate the portion of a record that can be released from withheld portions," she does not indicate why sender and receiver information was not disclosed for all withheld e-mails. Singh Decl. ¶ 10. I will order, within 10 days, the IRS to show cause as to why the sender and recipient information of all withheld e-mails should not be disclosed to plaintiffs.

## IV. Conclusion

For the reasons stated herein, I will deny *pendente lite* <u>Plaintiffs'</u> <u>Motion for Summary Judgment</u> [#11] and <u>Internal Revenue Service's Motion for</u> <u>Summary Judgment</u> [#14]. Defendant is ordered to show cause in 10 days why Bates # 00242 and sender and receiver information for withheld e-mails should not be disclosed.

**SO ORDERED.**

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

ADDENDUM

Apparently unwilling to ruin the surprise, neither party advised this Court that another court, the United States District Court for the U.S. Virgin Islands, was simultaneously entertaining a challenge by different but related plaintiffs to the IRS' refusal to disclose the records at issue in this case. This led both courts to expend the time reaching independent conclusions, a process that could have been avoided, or at least shortened substantially, had plaintiffs only informed both courts of the pendency of the challenges and suggested that one stay its hand until the other had ruled.

That being water under the bridge, it makes sense to review both opinions now so that the differences between them can be highlighted, a process that one can hope will expedite further review of both of them.

First, this Court rejected plaintiffs' contention that the cut-off date for the search should be January 10, 2008, while the district court in the U.S. Virgin Islands held that using the date of the request, June 6, 2007, was unreasonable and that there was a genuine issue of material fact as to when the IRS began its search. As I have explained, however, the difference between using the request date and the search date is insignificant and plaintiffs' contention that the Court use January 10, 2008, the date the IRS asked for more time to complete the search, has nothing to recommend it.

Second, the Virgin Islands court held that while section 6103 applied and justified the exemption the IRS claimed, the IRS must still segregate and disclose data, including names of employees, that could not be classified as taxpayer data. It was unnecessary for me to reach that issue, because I held that the concerned documents were exempt under other exemptions.

Third, the Virgin Islands court held that items three and four in Appendix C, described as "Moss's notes and impressions of a third party interview" and "conference or contact memorandum written by revenue agent regarding a third party taxpayer's interview" were not covered under the attorney-client and work-product privileges. Again, it was unnecessary for me to reach that issue since I held those documents to be exempt under other exemptions or requested additional briefing.

Fourth, while the Virgin Islands court held that IRS must disclose the names and personal information of IRS employees, I have required additional briefing of that issue.

Finally, in all other respects, the two courts agreed.